UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ISABEL P. VASQUEZ, | ) |
| | ) No. CV-05-5086-MWL |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on March 13, 2006. (Ct. Rec. 13, 21). Plaintiff Isabel Vasquez ("Plaintiff") filed a reply brief on March 10, 2006. (Ct. Rec. 24). Attorney David L. Lybbert represents Plaintiff; Special Assistant United States Attorney Richard A. Morris represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 21) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13). ///

1    **JURISDICTION**

2    On May 15, 1992, Plaintiff applied for Supplemental Security

3    Income ("SSI") benefits and Disability Insurance Benefits ("DIB").

4    (Administrative Record ("AR") 198).  She was found to be disabled

5    as of February 22, 1992; however, her disability was found to have

6    ceased on January 1, 1997, after the regulations were changed

7    affecting Plaintiff's ability to remain on benefits when drug

8    addiction or alcoholism ("DAA") was a contributing factor material

9    to the Commissioner's determination that the individual was

10   disabled.  (AR 198-201, 377-385).  The Administrative Law Judge

11   ("ALJ") concluded on June 22, 1998, that Plaintiff failed to

12   establish disability based on her medical conditions independent

13   of DAA, and; accordingly, her eligibility for disability benefits

14   was terminated as of January 1, 1997.  (AR 383, 385).  Plaintiff

15   appealed this determination, and the Appeals Council denied a

16   request for review on January 14, 2000.  (AR 397-400).  Therefore,

17   the ALJ's June 22, 1998 decision became the final decision of the

18   Commissioner, which was appealable to the district court pursuant

19   to 42 U.S.C. § 405(g).

20   It appears that Plaintiff did not appeal the ALJ's June 22,

21   1998 determination to the district court.  Instead, on February 1,

22   2000, Plaintiff filed new applications for SSI benefits and DIB,

23   alleging a disability onset date of January 1, 1997, due to

24   degenerative disc disease, depression, arthritis, acute chronic

25   spinal arthritis, and gout.  (AR 434-436, 454, 638-640).  The

26   applications were denied initially and on reconsideration.

27   ///

28   ///

After timely requesting a hearing, Plaintiff appeared before an ALJ on December 14, 2001, at which time the ALJ heard testimony from Plaintiff. (AR 867-896). A supplemental hearing was held on October 3, 2002, at which time the ALJ heard testimony from Plaintiff and vocational expert, Tom Moreland. (AR 897-932). On January 31, 2003, the ALJ issued a decision finding that claimant was not disabled. (AR 653-658). However, on March 19, 2003, the Appeals Council vacated the January 31, 2003 hearing decision and remanded the case to an ALJ for further proceedings. (AR 665-667). The Appeals Council concluded that the ALJ did not address the proper time period and directed that a new determination be made applying the original onset date (January 1, 1997). (AR 666-667).

On December 8, 2003, Plaintiff appeared before ALJ Paul Gaughen, at which time the ALJ heard testimony solely from Plaintiff. (AR 933-952). A supplemental hearing was held on November 18, 2004, at which time the ALJ heard testimony from Plaintiff, medical expert Glen Almquist, M.D., and vocational expert, Bill Weiss. (AR 953-1018). On March 25, 2005, ALJ Paul Gaughen issued a decision finding that Plaintiff was not disabled. (AR 27-36). The Appeals Council denied a request for review on July 7, 2005. (AR 11-14). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on August 19, 2005. (Ct. Rec. 2).

///

///

1    The relevant applications for DIB and SSI benefits in this

2   matter are Plaintiff's February 1, 2000 applications.  (AR 434-

3   436, 638-640, 935).  The relevant time period in this action is

4   from January 1, 1997 (the date after Plaintiff's previous

5   disability was found to have ceased) through March 25, 2005 (the

6   date of ALJ Paul Gaughen's determination in this case).  Evidence

7   from outside of this period of time can be deemed useful as

8   background information; however, it is irrelevant to the extent

9   that it does not address Plaintiff's medical status during the

10  relevant period at issue in this action.

11                          **STATEMENT OF FACTS**

12    The facts have been presented in the administrative hearing

13  transcript, the ALJ's decision, the briefs of both Plaintiff and

14  the Commissioner and will only be summarized here.  Plaintiff was

15  56 years old on the date of ALJ Paul Gaughen's decision.  (AR 28).

16  Plaintiff indicated that she does not feel she is physically or

17  mentally able to return to any kind of work that she has done in

18  the past.  (AR 948).

19    At the administrative hearing held on December 8, 2003,

20  Plaintiff testified that, with regard to back symptoms, she was in

21  constant pain in the mid to late 1990's.  (AR 943).  She stated

22  that she could sit for a little while but would then need to get

23  up and walk due to cramping and pain.  (AR 943).  She indicated

24  that if she walked one block her left hip would hurt, and she

25  would need to find a place to sit or something to lean against.

26  (AR 944).  She stated she could not lift any amount and was unable

27  to bend like she was once capable of doing.  (AR 944).  Because of

28  the back pain, she had difficulty with sleeping.  (AR 948-949).

1   Plaintiff testified that over the last two years she had been
2   going to other doctors for treatment for low back pain, and those
3   doctors had put her on different medications.  (AR 945).  She
4   indicated that she also continued on medication for depression and
5   had previously gone to counseling.  (AR 946).  She testified that
6   she had been seeing a counselor for a year or two, but it had been
7   a while.  (AR 947).

8   With regard to her past problems with drugs and alcohol,
9   Plaintiff stated that she had been clean and sober for close to
10  nine years.  (AR 948).  She testified that she knew that she
11  "destroyed [her] body" with the drugs and alcohol.  (AR 949).  She
12  specifically stated that "it was just depression because of the
13  drugs."  (AR 949).

14  Plaintiff indicated that she was assaulted by a spouse in
15  1992 and, from that time, she has had difficulties with her back
16  and with depression.  (AR 949-950).  She stated that she gradually
17  got worse.  (AR 950).

18  At the administrative hearing held on November 18, 2004,
19  Plaintiff testified that her job duties at the farms and ranches
20  she previously worked at consisted of pruning, picking fruits and
21  vegetables, carrying heavy baskets and bags, climbing ladders and
22  bending to cut onions.  (AR 985-986).  Plaintiff also testified
23  that she had previously worked in sorting vegetables and fruits.
24  (AR 991, 1000-1002).  She also performed the job of trimming
25  potatoes with a knife.  (AR 993).  Plaintiff stated that she also
26  previously worked as a certified nurse's assistant in 1991 and
27  1992.  (AR 1003-1004).
28  ///

At the administrative hearing held on November 18, 2004, Medical expert Glen Almquist, M.D., testified.  (AR 960-983).  Dr. Almquist indicated that Plaintiff suffered from mild to moderate degenerative arthritis of the lumbosacral spine at L4-5 and L5/S1 without radiculopathy and, at 5'1" tall and weighing 220 pounds, was obese.  (AR 963).  With the assistance of the ALJ, Dr. Almquist indicated that the first objective test of the lumbosacral spine was produced in 1996.  (AR 964-967).  He found that a 1996 CT Scan of the lumbosacral spine coincided with his conclusion that Plaintiff had moderate degenerative arthritis at the two levels.  (AR 966).  He next noted that a 2000 x-ray of the lumbosacral spine revealed some hypertrophic osteofite formation which was compatible with her age.  (AR 967-968).  Dr. Almquist also noted that there was no mention of any narrowing of the disk spaces or narrowing of the foraminal.  (AR 968).  An August 31, 2000 x-ray further revealed that the disk spaces were preserved, there was degenerative facet arthritis of the lower two spaces for the lumbar and lumbosacral space, and the cervical spine was normal.  (AR 968).  April 25, 2002 x-rays of the thoracic spine showed moderate degenerative arthritis spaces as normal.  (AR 968-969).  Dr. Almquist noted that a February 21, 2003 x-ray of the lumbosacral spine showed mild anterior subluxation which may be due to degenerative facet changes which are common in the lower spine.  (AR 969).  Dr. Almquist indicated that this confirmed the 1996 CT scan and other x-rays that revealed that Plaintiff had moderate degenerative arthritis changes.  (AR 969).

///

///

Based on his review of the record, Dr. Almquist concluded that Plaintiff's moderate degenerative arthritis with obesity did not meet or equal a Listings impairment. (AR 971). He further concluded that Plaintiff would be restricted to light work as a result of her impairments. (AR 971). He indicated that she would be able to forward bend and squat only occasionally and may have other issues with mental health, but would otherwise be able to do just about a full level of light work. (AR 971). Dr. Almquist noted that Plaintiff's arthritis would not preclude the bending, stooping, twisting and turning requirements of light work. (AR 972-973). He indicated that she should only occasionally bend, twist and stoop. (AR 973-974). He specifically stated, however, that Plaintiff was not restricted from holding her hands outstretched in front of her as in doing assembly or trim type work. (AR 974).

On cross-examination, Dr. Almquist responded that even with the combined effects of Plaintiff's degenerative arthritis, the symptoms from the arthritis and the impact of her obesity, she did not come close to meeting or equaling Listing 1.04. (AR 982). He explained that, while her weight was high, her back changes were only moderate and there was no radiculopathy. (AR 982). Dr. Almquist stated that what Plaintiff has is very common for middle aged people, arthritis of the facets. (AR 982). He stated that she is a typical light work patient with obesity. (AR 983).

Vocational expert Bill Weiss also testified at the administrative hearing held on November 18, 2004. (AR 984-1016). Mr. Weiss indicated that Plaintiff's past farm work was classified as field worker II. (AR 986). He described this work as a heavy-

duty, unskilled job.  (AR 989).  After the ALJ and Plaintiff's counsel examined Plaintiff regarding her vocational history (AR 991-1006), Mr. Weiss concluded that Plaintiff also performed past relevant work as an agricultural sorter with trimming, a position which is light-duty and unskilled (AR 1006-1007).  He also found that her past relevant work as a certified nurse's assistant was medium-duty, semi-skilled work.  (AR 1007).

The ALJ gave Mr. Weiss the hypothetical of an individual with a marginal education, approximately 50-years old, work history equal to Plaintiff's, capable of performing light exertion work but with obesity being a factor, could sit about eight hours in an eight hour workday and stand and/or walk about six hours in an eight hour workday, has an unrestricted ability to reach forward, can occasionally bend, stoop, kneel, crawl or twist, has significant problems in learning detailed instructions or procedures or complex new work tasks, can learn and apply simple, repetitive tasks, has difficulty working without supervision and in adapting to frequent changes in the work setting or in procedures to be followed, may occasionally present with irritability from a depressed affect, and may occasionally show deficits in her alertness and concentration on task (which could be corrected by supervision).  (AR 1007-1008).  Assuming this type of individual, the vocational expert opined that the hypothetical individual could perform Plaintiff's past relevant work as an agricultural sorter.  (AR 1008).

On cross-examination, Mr. Weiss indicated that even if the individual would have to avoid repetitive or prolonged bending, twisting and stooping, she could still perform the physical

demands of an agricultural sorter. (AR 1009). With the added mental restrictions as outlined by James Bailey, Ph.D., Mr. Weiss indicated he would need further information before making a vocational opinion. (AR 1010-1012). With the limitations as assessed by Dr. Kahn in August of 2000, Mr. Weiss indicated that the limitations would preclude all work. (AR 1012-1013). With the restriction assessed by Dr. Bunch in January of 1997, coupled with the mental limitations indicated by the ALJ in the hypothetical, Mr. Weiss stated that Plaintiff could still perform other simple, sedentary, unskilled jobs. (AR 1013).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.

20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

1    *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

2    met once Plaintiff establishes that a physical or mental

3    impairment prevents him from engaging in his previous occupation.

4    The burden then shifts to the Commissioner to show (1) that

5    Plaintiff can perform other substantial gainful activity and (2)

6    that a "significant number of jobs exist in the national economy"

7    which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498

8    (9th Cir. 1984).

9                              **STANDARD OF REVIEW**

10        Congress has provided a limited scope of judicial review of a

11   Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold

12   the Commissioner's decision, made through an ALJ, when the

13   determination is not based on legal error and is supported by

14   substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

15   (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

16   1999).  "The [Commissioner's] determination that a plaintiff is

17   not disabled will be upheld if the findings of fact are supported

18   by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572

19   (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

20   is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

21   1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.

22   *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

23   *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

24   573, 576 (9th Cir. 1988).  Substantial evidence "means such

25   evidence as a reasonable mind might accept as adequate to support

26   a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

27   (citations omitted).  "[S]uch inferences and conclusions as the

28   [Commissioner] may reasonably draw from the evidence" will also be

upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

    It is the role of the trier of fact, not this court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

**ALJ'S FINDINGS**

    The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since her alleged onset date.  (AR
29).  At step two, the ALJ determined that Plaintiff has the
severe impairments of degenerative changes of the spine, obesity,
depression, anxiety related to past domestic violence, and
borderline intellectual functioning, but that she does not have an
impairment or combination of impairments listed in or medically

equal to one of the Listings impairments.  (AR 29).  The ALJ
indicated that Plaintiff also has hypertension and osteoarthritis,
but that these impairments did not significantly limit her ability
to perform basic work activities and; therefore, were not
considered severe.  (AR 29-30).

The ALJ noted that Plaintiff had a history of substance
abuse, involving alcohol, cocaine and marijuana, but that the
medical records indicated that the substance abuse had been in
remission since 1994.  (AR 30).  The ALJ thus concluded that
Plaintiff had not had a medically determinable substance abuse
disorder at any time pertinent to his decision.  (AR 30).

The ALJ concluded that Plaintiff has the residual functional
capacity ("RFC") to perform a limited range of light work.  (AR
30).  He found that Plaintiff would be capable of lifting or
carrying no more than 20 pounds occasionally and no more than 10
pounds frequently, could stand and/or walk no more than a total of
six hours in an eight-hour workday, could only occasionally bend,
stoop, crawl, or twist, could not perform work involving detailed
instructions, would have difficulty working without supervision,
would have difficulty in adapting to changes in the workplace or
in procedures, and would be unable to perform work that would not
accommodate her occasional concentration deficits, irritability
and affect.  (AR 32).

At step four of the sequential evaluation process, the ALJ
found that, based on Plaintiff's RFC, she was able to perform the
exertion requirements of her past relevant work as an agricultural
sorter, a job the vocational expert described as light exertion,
unskilled.  (AR 34).  Accordingly, the ALJ determined at step four

1  of the sequential evaluation process that Plaintiff was not

2  disabled within the meaning of the Social Security Act.  (AR 35-

3  36).

4                              **ISSUES**

5      Plaintiff contends that the Commissioner erred as a matter of

6  law.  Specifically, she argues that:

7      1.   Plaintiff is more limited from a psychological

8  standpoint than what was determined by the ALJ;

9      2.   The ALJ erred by failing to conclude that Plaintiff

10  meets or equals a Listings impairment; specifically, Listings

11  12.05 or 12.04;

12      3.   Plaintiff is more limited from a physical standpoint

13  than what was determined by the ALJ;

14      4.   The ALJ erred by finding Plaintiff not credible; and

15      5.   The ALJ erred by failing to apply the grids which would

16  have directed a finding that Plaintiff is disabled;

17      This court must uphold the Commissioner's determination that

18  Plaintiff is not disabled if the Commissioner applied the proper

19  legal standards and there is substantial evidence in the record as

20  a whole to support the decision.

21                            **DISCUSSION**

22  **A.  Psychological Limitations**

23      Plaintiff contends that she is more limited from a

24  psychological standpoint than what was determined by the ALJ.

25  (Ct. Rec. 13-2).  Plaintiff specifically asserts that the ALJ

26  erred by failing to find that she meets or equals Listings 12.05

27  or 12.04.  (Ct. Rec. 13-2, p. 6).  Therefore, Plaintiff argues

28  that the ALJ erred at step three of the sequential evaluation

process.    In support of her argument in this regard, Plaintiff
directs the Court's attention to psychological testing done by
Daniel McIvor, Ph.D., in November of 1996 (AR 300-308), an
evaluation done by Roberto Valdez, Ph.D., on July 7, 2003 (AR 696-
701), a form completed by reviewing state agency physician, James
E. Bailey, Ph.D., on July 27, 2002 (AR 564-566), an August 2000
consultative examination performed by Muhammed Kahn, M.D. (AR 582-
585), and forms completed by mental health counselor Hector DeLeon
(AR 750-757).   (Ct. Rec. 13-2, pp. 6-11).

        At the outset, the undersigned notes that the forms completed
by Mr. DeLeon are unpersuasive.   Mr. DeLeon is neither a physician
nor a licensed or certified psychologist.   Therefore, his opinions
do not qualify as "medical evidence . . . from an acceptable
medical source" as required by the Social Security regulations.
20 C.F.R. §§ 404.1513, 416.913.   Moreover, Mr. DeLeon concluded
that Plaintiff's symptoms would last a minimum of three months to
30 weeks and a maximum of six months to 30 weeks.   (AR 753, 757).
Mr. DeLeon thus found that Plaintiff's mental limitations would
not meet the duration requirements of the Act (one year), instead
finding that they were only expected to last a maximum of 30
weeks.   42 U.S.C. § 1382c(a)(3)(A).   Mr. DeLeon also stated that
Plaintiff's mental health impairments would affect her ability to
work in a regular and predictable manner "until she is stable,"
(AR 753), and then on the same page of the same report Mr. DeLeon
indicated that Plaintiff was "somewhat stable" (AR 753).

        The ALJ found that Plaintiff's mental RFC includes
limitations of difficulty working without supervision and in
adapting to changes in the workplace or in procedures, and an

inability to perform work that would not accommodate her occasional concentration deficits, irritability and flat affect. (AR 32).  In making this determination, the ALJ appropriately interpreted all relevant medical reports of record.  (AR 29-34).

### 1.  Listing 12.05C - Mental retardation

Plaintiff argues that she meets or equals Listing 12.05C.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  Listing 12.05 deals with mental retardation characterized as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  20 C.F.R. § 404, Subpt. P, App. 1.  In order to meet or equal Listing 12.05C, Plaintiff must show a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05C.

It is Plaintiff's responsibility to prove that she is disabled at step three of the sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  Plaintiff bears the burden of establishing that her impairments satisfy the requirements of a Listings impairment.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-1099 (9th Cir. 1999).

While Plaintiff directs the Court's attention to Dr. Valdez' July 2003 examination which found that Plaintiff had a verbal IQ score of 69 (AR 698), this is the only score of record falling within the range of Listing 12.05C.  Dr. Valdez also found her performance IQ was 79 and her full scale IQ was 72, above the

range set by Listing 12.05C. (AR 698). It is also significant to
note that Dr. Valdez indicated that Plaintiff's diagnosed
conditions were caused by past or present alcohol or drug abuse.
(AR 697). Dr. McIvor's November 1996 examination scored
Plaintiff's verbal IQ as 72, performance IQ as 91 and full-scale
IQ as 80. (AR 306). Dr. McIvor specifically stated in his report
that Plaintiff could possibly function well in a fairly simple,
repetitive inspection or assembly job. (AR 307). Both Drs.
McIvor and Valdez concluded that Plaintiff was functioning in the
borderline range of intelligence. (AR 307, 698). This finding of
borderline intellectual functioning was confirmed by clinical
psychologist Lynn M. Orr, Ph.D., who evaluated Plaintiff on
November 23, 2004. (AR 1023-1028). Dr. Orr also determined that
the record reflects that Plaintiff was functioning in the
borderline range, rather than in the range of one considered
mentally retarded.[1] (AR 1027). Dr. Orr specifically found that
Plaintiff presented no indication of psychomotor agitation or
retardation. (AR 1026). In addition, the form filled out by
David E. Gross, M.D., and affirmed by Dr. Bailey on July 27, 2000,
noted that Plaintiff's level of understanding and memory was
compatible with remembering short and simple instructions,
concentration and attention should be adequate for simple
repetitive tasks for a full workday and full workweek, social
interaction capacity should be adequate for dealing with peers and
supervisors, and adaptation capacity should be intact for usual
work setting. (AR 566). Christine Saroian, M.D., evaluated

---

[1]While Dr. Orr indicated that the record reflected a borderline range
of intelligence, she found that Plaintiff's behavior during the exam was more
that of a person in the average or low-average range. (AR 1027).

Plaintiff on June 28, 2000, and determined that Plaintiff did not appear to be agitated or to display psychomotor retardation or agitation. (AR 561). Dr. Saroian noted that Plaintiff's cognitive abilities seemed to be adequate, she was oriented to person, place and time, and her attention, memory and concentration seemed to be fair. (AR 561-562).

The record, as correctly assessed by the ALJ, does not demonstrate that Plaintiff's level of functioning was consistent with mental retardation. The ALJ properly found, consistent with all medical professionals of record, that Plaintiff had a severe medically determinable impairment of borderline intellectual functioning (AR 29) and determined that this impairment did not meet or equal a Listings impairment. Based on the foregoing, Plaintiff failed to establish that she met or equaled the listing requirements of 12.05C, and the ALJ did not err at step three of the sequential evaluation process in this regard.

**2.  Listing 12.04 – Affective Disorders**

Listing 12.04 deals with affective disorders characterized as a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04. To meet listing 12.04, Plaintiff must demonstrate persistent medical findings of an affective disorder coupled with two of the following:  marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each or extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04.  To meet listing 12.04, Plaintiff could also document a medical history of a

chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04C.  As noted above, Plaintiff bears the burden of establishing that her impairments satisfy the requirements of a Listings impairment. *Tackett*, 180 F.3d at 1098-1099.

Plaintiff argues that the July 27, 2000 report of Dr. Bailey supports her assertion of meeting Listing 12.04. (Ct. Rec. 13-2, p. 10).  This report was actually completed by Dr. Gross and affirmed by Dr. Bailey. (AR 564-566).  Although the form does note several moderate limitations with Plaintiff's functioning, it was not found that Plaintiff suffered any marked restrictions. (AR 564-566).  In fact, as noted above, the doctors indicated that Plaintiff's level of understanding and memory was compatible with remembering short and simple instructions, concentration and attention should be adequate for simple repetitive tasks for a full workday and full workweek, social interaction capacity should be adequate for dealing with peers and supervisors, and adaptation capacity should be intact for usual work setting. (AR 566).  Dr. Gross also filled out a psychiatric review technique form on July 27, 2000, indicating that Plaintiff was only slightly limited in activities of daily living, moderately limited in social functioning, seldom had deficiencies in concentration, persistence, or pace and had only one or two instances of decompensation in the workplace. (AR 575).  Dr. Bailey made essentially identical findings on a psychiatric review technique form on December 12, 2000. (AR 625).  Furthermore, state agency reviewing physician, John McRae, Ph.D., completed a psychiatric

review technique form on August 20, 2003, indicating that
Plaintiff was only mildly restricted in activities of daily
living, moderately limited in maintaining social functioning, had
moderate difficulties in maintaining concentration, persistence,
or pace and had no repeated episodes of decompensation.  (AR 791).

Plaintiff also directs the Court's attention to the
psychological evaluation completed by Dr. Valdez in July of 2003.
(Ct. Rec. 13-2, p. 11; AR 696-701).  Consistent with the above
medical professionals, Dr. Valdez noted several moderate
limitations, but no marked or severe limitations.  (AR 696-701).
Dr. Valdez also specifically found that Plaintiff's concentration
and attention were not grossly impaired and her memory was good
and noted that she was punctual for her appointment and was able
to stay on task during the interview and testing.  (AR 701).

Plaintiff also points to the forms completed by Mr. DeLeon.
(Ct. Rec. 13-2, p. 11, Ct. Rec. 24, p. 4).  As noted above, Mr.
DeLeon's opinions are not persuasive.  *See supra*.

Finally, Plaintiff indicates that the check-box form
completed by Muhammed Kahn, M.D., supported a finding that
Plaintiff met or equaled Listing 12.04.  (Ct. Rec. 13-2, p. 10, AR
582-585).  On August 31, 2000, Dr. Kahn filled out a form checking
several boxes indicating that Plaintiff had marked functional
limitations due to her moderate depression.[2]  (AR 584-585).  A
check-box form is entitled to little weight.  *Crane v. Shalala*, 76
F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of

_____

[2]It is significant to note, however, the Dr. Khan indicated that mental
health intervention (antidepressant adjustment and therapy) was likely to
restore or substantially improve Plaintiff's ability to work in a regular and
predictable manner.  (AR 585).

a check-off report that did not contain an explanation of the
bases for the conclusions made was permissible).  The ALJ
appropriately rejected Dr. Khan's opinions because they were given
for use in determining Plaintiff's eligibility for public
assistance, the opinions were not supported by reference to
standardized testing, there was no treatment relationship between
Dr. Khan and Plaintiff, and he did not have a detailed,
longitudinal picture of Plaintiff's impairments.  (AR 33).  The
undersigned notes that Dr. Khan's check-box findings are also
inconsistent with the weight of the record evidence.  Accordingly,
the undersigned agrees with the ALJ that Dr. Khan's report is not
persuasive.

Dr. Saroian evaluated Plaintiff on June 28, 2000, and
determined that Plaintiff did not display psychomotor retardation
or agitation.  (AR 561).  Although Dr. Saroian diagnosed Plaintiff
with major depression, recurrent, moderate, she noted that
Plaintiff's cognitive abilities seemed to be adequate, her
attention, memory and concentration seemed to be fair, she seemed
to have insight into her illness and to display good judgment, and
she did all of her own household chores, took the bus to
appointments, watches television and does needlework.  (AR 561-
562).

Clinical psychologist, Lynn M. Orr, Ph.D., evaluated
Plaintiff on November 23, 2004.  (AR 1023-1032).  Dr. Orr
questioned Plaintiff's effort and the validity of several of
Plaintiff's responses on exam.  (AR 1023-1028).  Dr. Orr found no
indication of psychomotor agitation or retardation, and noted that
Plaintiff appeared only mildly depressed while on antidepressants.

(AR 1026).  While Dr. Orr indicated that the record reflected a borderline range of intelligence, she indicated that Plaintiff's behavior during the exam was more that of a person in the average or low-average range.  (AR 1027).  Dr. Orr diagnosed a Dysthymic Disorder, with early onset, mild while on medication and possible underlying learning disabilities.  (AR 1027).

Based on the foregoing, it is apparent that Plaintiff has failed to establish that she meets or equals Listing 12.04 for affective disorders, and, accordingly, the ALJ did not err at step three of the sequential evaluation process in this regard.

The undersigned additionally finds that the ALJ's mental RFC finding as a whole is properly supported.  The record does not reflect more restrictive findings than Plaintiff having difficulty working without supervision and in adapting to changes in the workplace or in procedures, and that she would be unable to perform work that would not accommodate her occasional concentration deficits, irritability and flat affect.  (AR 32). This mental RFC finding by the ALJ is in accord with the weight of the record evidence.  Accordingly, the ALJ appropriately did not find Plaintiff more limited from a psychological standpoint.

**B.  Physical Limitations**

Plaintiff also contends that the ALJ erred by finding that she is capable of light work since the majority of the medical information of record supports a finding that she is limited to sedentary exertion level work due to her severe degenerative arthritis in her low back.  (AR 13-2, p. 13).  The Commissioner responds that the ALJ's physical RFC finding is supported by substantial evidence.  (Ct. Rec. 22, pp. 20-27).

Having considered Plaintiff's medical records and testimony, the ALJ found that Plaintiff has the physical RFC to perform light exertion level work with specified postural and nonexertional limitations.  (AR 32).  In making this determination, the ALJ considered the relevant evidence of record and rejected certain physician opinions he found contrary to the weight of the record evidence.  (AR 29-34).

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d

at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Thomas Dorsey, M.D., an orthopedic specialist, examined Plaintiff of June 1, 2000. (AR 545-550). Dr. Dorsey noted that x-rays of the lumbar spine revealed that there was some hypertrophic osteophyte formation about the facet joint at L5-S1. (AR 548). Based on his examination and a review of the x-rays, Dr. Dorsey diagnosed radiographic changes, lumbar spine, consistent with Plaintiff's age and multiple somatic complaints without evidence of significant orthopaedic pathology. (AR 548). He opined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently (medium exertion work), push and pull without restriction, may occasionally engage in stooping and crouching activities, and should be able to stand, walk, and sit for six hours out of an eight-hour day with standard breaks. (AR 549).

Contrary to Plaintiff's argument (Ct. Rec. 13-2, p. 12), the x-ray reports support Dr. Dorsey's conclusions. August 31, 2000, x-rays showed that the vertebral body was normal and in alignment,

the disc spaces were preserved, and there were degenerative
changes within the posterior facet joints with narrowing of the
joint spaces and sclerosis of ventricular margins. (AR 591).
Degenerative change posterior facet joints, lower lumbosacral
spine was diagnosed. (AR 591). March 13, 2001 x-rays revealed an
overall stable exam compared to the August 31, 2000 x-rays. (AR
773). Although it was noted that oblique film showed severe
degenerative facet change versus residual bone grafting at the L5
level, it was noted that it appeared to be grossly stable. (AR
773). The September 1996 lumbar spine CT scan referenced by
Plaintiff (Ct. Rec. 13-2, p. 12), revealed hypertrophic
degenerative changes at the facets of L4-5 and L5-S1 levels,
showing slight interval worsening since prior study (AR 290). No
definite evidence of significant bulge or herniation was found at
the levels studied. (AR 290).

These studies, and Dr. Dorsey's examination, support the
ALJ's finding of a severe impairment due to degenerative changes
of the spine (AR 29) and a finding that Plaintiff was limited to
light exertion work (AR 32). The ALJ also considered the opinion
of medical expert Almquist, who thoroughly reviewed the record.
(AR 960-983). Dr. Almquist indicated that Plaintiff suffered from
obesity and mild to moderate degenerative arthritis of the
lumbosacral spine at L4-5 and L5-S1 without radiculopathy. (AR
963). Dr. Almquist explained how the CT scans and x-rays of
record confirmed his opinion that Plaintiff had moderate
degenerative arthritis changes and would be limited to light
exertion level work. (AR 967-983). Dr. Almquist testified that
///

Plaintiff's condition, arthritis of the facets, is very common for middle aged people. (AR 982). He stated that she is a typical light work patient with obesity. (AR 983). The undersigned agrees with Dr. Almquist's assessment as well as the ALJ's findings regarding Plaintiff's physical RFC.

Alex Najera, M.D., Plaintiff's treating physician in 2002 and 2003, opined on check-box forms on August 1, 2002, and July 1, 2003, that Plaintiff was limited to sedentary exertion level work. (AR 728, 761). As discussed above, a check-box form, without an explanation of the bases for the conclusions, is entitled to little weight. *Crane*, 76 F.3d at 253. These forms contain no details or other rationale for the conclusions noted. The check-box reports of Dr. Najera also conclude that the limitations he assessed were expected to last a maximum of 10 months. (AR 728, 761). Therefore, Dr. Najera found that Plaintiff's limitations would not meet the duration requirements of the Act (one year), instead finding that they were only expected to last a maximum of 30 weeks. 42 U.S.C. § 1382c(a)(3)(A).

Although the ALJ erred by noting that Dr. Najera's opinions were entitled to less weight because they were given by a physician who did not have a treatment relationship with Plaintiff, the ALJ correctly noted that the opinions were given for use in evaluating Plaintiff's public assistance eligibility and were not supported by reference to standardized medical testing. (AR 33). Moreover, as noted by the Commissioner (Ct. Rec. 22, p. 23), Dr. Najera completed two additional physical evaluation forms in 2004, one limiting her to sedentary work (AR ///

1035) and another limiting her to light work (AR 1039).  Dr.

Najera's opinions were appropriately rejected by the ALJ.  (AR

33).

A check-box form filled out by Richard P. Bunch, M.D., on

January 28, 1997, noted that Plaintiff would be restricted to

sedentary work.  (AR 340).  However, as noted by the Commissioner

(Ct. Rec. 22, p. 24), reviewing state agency physicians found on

June 29, 2000, and December 8, 2000, that Plaintiff was limited to

light exertion work, with some postural limitations (AR 552-553;

608-609).

It is the responsibility of the ALJ to determine credibility,

resolve conflicts in medical testimony and resolve ambiguities.

*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The Court

thus has a limited role in determining whether the ALJ's decision

is supported by substantial evidence and may not substitute its

own judgment for that of the ALJ even if it might justifiably have

reached a different result upon de novo review.  42 U.S.C. §

405(g).  The undersigned finds that the ALJ thoroughly analyzed

the evidence of record and provided specific and legitimate

reasons for rejecting opinions that Plaintiff was limited to

sedentary exertion work.  Accordingly, the ALJ's physical RFC

determination, that Plaintiff is limited to light exertion work,

is appropriate in this case.

**C. Plaintiff's Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not

fully credible is not properly supported.  (Ct. Rec. 13-2, pp. 13-

17).  The Commissioner responds that the ALJ's credibility finding

is supported by substantial evidence.  (Ct. Rec. 22, pp. 18-20).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Since there is evidence of malingering in this case, it was not necessary for the ALJ to provide clear and convincing rationale to reject Plaintiff's subjective complaints. As noted above, Dr. Orr evaluated Plaintiff on November 23, 2004, and questioned Plaintiff's effort and the validity of several of Plaintiff's responses on exam. (AR 34, 1023-1028). As noted by the ALJ, Dr. Orr determined that Plaintiff's description regarding delusional thinking and visual and auditory hallucinations were atypical and had not appeared in any previous history, the validity of her responses on memory testing was questioned, and the results of the Trial 1 and Trial 2 tests indicated a very high likelihood that Plaintiff was not putting forth her best effort.

(AR 34, 1024-1027).  Dr. Orr administered a test of memory malingering and found that the score raised "significant questions regarding her being completely forthcoming in reporting her functional level and abilities accurately."  (AR 34, 1026).

The ALJ determined that Plaintiff's alleged subjective symptoms and functional limitations are not credible to the extent that they would have precluded her from performing a limited range of light work.  (AR 33-34).  In support of this finding, the ALJ indicated as follows:  (1) the record fails to establish that Plaintiff has sought or required significant forms of treatment such as periods of hospital confinement, emergency room care or significant office care other than for routine maintenance; (2) although she has alleged disabling musculoskeletal complaints, she has not been prescribed long-term medications such as anti-inflammatories, narcotics, steroids or muscle relaxants for her alleged pain; (3) Plaintiff's treatment efforts and requirements are inconsistent with her alleged constant pain and disability; and (4) Plaintiff's treatment history with regard to her depression is inconsistent with disabling symptoms and functional limitations (treatment notes reflect that her depression has improved with medication and therapy).  (AR 33-34).

As noted above, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes*, 881 F.2d at 751.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Allen*, 749 F.2d at 579.  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.

After reviewing the record, the undersigned judicial officer finds that the ALJ's rationale for discounting Plaintiff's subjective complaints, and, in particular, the medical report of Dr. Orr, provide sufficient support for the ALJ's conclusion that Plaintiff was not entirely credible.  Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case.  (AR 33-34).

**D.  Application of the Grids**

Plaintiff contends that the ALJ erred by failing to apply the grids in this case.  (Ct. Rec. 13-2, pp. 5-6).  The Commissioner responds that application of the grids was not necessary since the ALJ found, at step four of the sequential evaluation process, that Plaintiff could perform her past relevant work as an agricultural sorter.  (Ct. Rec. 22, pp. 27-28).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can

perform despite her identified limitations only after Plaintiff has established a prima facie case of disability by demonstrating she cannot return to her former employment. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) applying the grids[3] or (2) taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

As determined above, the weight of the record evidence in this case supports the ALJ's RFC finding that Plaintiff is capable of performing light exertion work with specified postural and nonexertional limitations. *See supra.* Vocational expert Bill Weiss testified at the administrative hearing held on November 18, 2004. (AR 984-1016). Mr. Weiss indicated that Plaintiff's past work as a field worker II, was a heavy-duty, unskilled job. (AR 986, 989). However, after the ALJ and Plaintiff's counsel examined Plaintiff regarding her vocational history (AR 991-1006), Mr. Weiss also concluded that Plaintiff performed past relevant work as an agricultural sorter with trimming, a position considered light-duty and unskilled (AR 1006-1007).

At step four of the sequential evaluation process, the ALJ found that, based on Plaintiff's RFC and the vocational expert's testimony, Plaintiff was capable of performing her past relevant work as an agricultural sorter, a light exertion, unskilled position. (AR 34). The ALJ thus determined, at step four of the

---

[3]The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart,* 856 F.2d at 1340 (*citing Derosiers v. Secretary of Health and Human Serv.*, 846 F.2d 573, 578 (9th Cir. 1988).

sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 35-36). Accordingly, there was no need for the ALJ to continue to step five of the sequential evaluation process which would require a determination to be made regarding whether Plaintiff, despite her limitations, is capable of performing other work existing in sufficient numbers in the national economy.  Application of the grids was not required in this case.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is able to perform light exertion work, including her past relevant work as an agricultural sorter, is supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 21**) is **GRANTED**.

3.  The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this __4th__ day of May, 2006.

                    s/Michael W. Leavitt
                    MICHAEL W. LEAVITT
            UNITED STATES MAGISTRATE JUDGE